# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERESA E. NEATHERY, an individual,<br><br>　　　　　　　　　　　　　Plaintiff,<br>vs.<br><br>CHEVRON TEXACO CORPORATION GROUP ACCIDENT POLICY NO. OK 826458 AND ACCIDENT POLICY NO. SLG-000784, group welfare benefits plans under ERISA, and DOES 1 through 10, inclusive,<br><br>　　　　　　　　　　　　　Defendants. | CASE NO. 05 CV 1883 JM (CAB)<br><br>**ORDER GRANTING MOTION FOR INTEREST, ATTORNEY'S FEES, AND COSTS**<br><br>Doc. No. 170 |

Plaintiff Teresa Neathery ("Neathery") brought this action to recover accidental life insurance proceeds under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Defendants are Voluntary Group Accident Insurance Plan and On-the-Job Accident Insurance Plan, erroneously sued as Chevron Texaco Corporation Group Accident Policy No. OK 826458 and Accident Policy No. SLG-000784 (collectively "Defendants"or "the Plans"). Life Insurance Company of North America ("LINA") is the administrator of the Plans. This court initially affirmed LINA's decision to deny benefits, but was overturned by the Ninth Circuit Court of Appeals. (Doc. Nos. 132, 134). On remand, this court reversed LINA's decision to deny benefits and entered judgment in favor of Neathery. (Doc. No. 167).

Neathery now moves the court to award prejudgment interest on the accidental death benefits

of $775,000, for attorney's fees, and for certain non-statutory costs. (Doc. No. 170). Defendants filed an opposition, and Neathery filed a reply to the opposition. (Doc. Nos. 184, 188).

**I.    BACKGROUND**

The long history of this case has been recounted in detail in prior orders of the this court. (*See* Doc. No. 167). Nonetheless, a brief recounting is necessary here. Neathery's husband died following a car crash while he was working for ChevronTexaco. (*Id.*) Neathery applied for benefits from the Plans but LINA denied her claim, asserting that Neathery's husband died as the result of a medical emergency and not an accident. (*Id.*) Neathery appealed administratively. (*Id.*) When LINA did not respond in the required time frame, Neathery filed this suit. (*Id.*)

Following a bench trial, this court affirmed LINA's decision to deny benefits. (Doc. No. 132). Plaintiff successfully appealed to the Ninth Circuit Court of Appeals. (Doc. No. 148). The Ninth Circuit reversed this court's decision because this court improperly relied on a report submitted by forensic pathologist Dr. James Lewis after the administrative record had closed. (*Id.*) On remand, this court reversed LINA's denial of benefits.

During the pendency of this lawsuit, Neathery's financial condition has declined. Neathery's husband was the primary earner in the family. (Doc. No. 170, Declaration of Theresa Neathery, hereinafter "Neathery Decl.," ¶ 8). Neathery earned $9.40 per hour working as a bus driver, but has since lost her job. (Neathery Decl. ¶¶ 8, 16). Trying to make ends meet, Neathery refinanced her home and later took out additional mortgages. (Neathery Decl. ¶¶ 8, 12, 14). Neathery's home was ultimately foreclosed upon, however, and Neathery lost approximately $70,000 in equity she had accumulated. (Neathery Decl. ¶¶ 4, 28). Neathery also withdrew early the contents of her 401(k) savings totaling approximately $100,000. (Neathery Decl. ¶ 23). Meanwhile, Neathery has accumulated approximately $14,000 in credit card debt. (*See* Neathery Decl. ¶ 25).

Throughout the litigation, Neathery has been represented by Timothy Lemucci, local counsel from Bakersfield, California, and the law firm Miller, Monson, Peshel, Polacek & Hoshaw ("Miller, Monson"). (Doc. No. 170, Declaration of Timothy Lemucci, hereinafter "Lemucci Decl.," ¶ 8; Doc. No. 170, Declaration of Thomas Monson, hereinafter "Monson Decl.," ¶ 8). Two attorneys from Miller, Monson—Thomas Monson and Susan Horner—did most of the work on the case, with Ms.

1 Horner billing the vast majority. (*See* Monson Decl. ¶ 9, Ex. 1, Ex. 2, Ex. 3, Ex. 4). Both Monson and Horner are experienced ERISA litigators. (Monson Decl. ¶ 5; Doc. No. 170, Declaration of Susan Horner, hereinafter "Horner Decl.," ¶ 8). Although Lemucci and Miller, Monson represent Neathery on a contingent fee bases, they have maintained contemporaneous billing records for the matter. (Monson Decl. ¶ 8). These records indicate that Neathery's counsel have billed a total of 1,668.2 hours to this matter, plus paralegal and secretarial time. (Monson Decl. ¶ 20-22; Lemucci Decl. ¶ 14-20). The value of these services, according to counsel, is $801,943.50. (Monson Decl. ¶ 21; Lemucci Decl. ¶ 25).

## II. LEGAL STANDARDS

The award of prejudgment interest, attorney's fees, and costs under ERISA is within the district court's discretion. *Blankenship v. Liberty Life Ins. Co. of Boston*, 486 F.3d 620, 627 (9th Cir. 2007) (citations omitted) (prejudgment interest); *Nelson v. EG&G Energy Measurements Group, Inc.*, 37 F.3d 1384, 1392 (9th Cir. 1994) (attorney's fees); *Landwehr v. DuPree*, 72 F.3d 726 739 (9th Cir. 1995) (costs).

## III. DISCUSSION

### A. Prejudgment Interest

"A district court may award prejudgment interest on an award of ERISA benefits at its discretion." *Blankenship v. Liberty Life Ins. Co. of Boston*, 486 F.3d 620, 627 (9th Cir. 2007) (citations omitted). The court should exercise its discretion as guided by fairness and a balancing of the equities. *Landwehr v. DuPree*, 72 F.3d 726, 739 (9th Cir. 1995) (citations omitted).

The court finds it appropriate to award Neathery prejudgment interest in this case. Neathery has waited over five years from the time of her husband's death to receive the life insurance benefits she is due. During that time, in large part because she did not have access to the life insurance benefits, Neathery has accumulated substantial credit card debt, lost her home (including significant equity) to foreclosure, and emptied her 401(k) account. Under these circumstances, prejudgment interest is required to make Neathery whole. *Cf. Peterson v. Federal Express Corp. Long Term Disability Plan*, 525 F. Supp. 2d 1125, 1130 (D. Ariz. 2007).

The purpose of prejudgment interest is to fully compensate the plaintiff for "the losses incurred

as a result of [the defendant's] nonpayment of benefits." *Dishman v. UNUM Life Ins. Co. of Am.*, 269 F.3d 974, 988 (9th Cir. 2001). "The interest rate prescribed for post-judgment interest under 28 U.S.C. § 1961 is appropriate for fixing the rate of pre-judgment interest unless the trial judge finds, on substantial evidence, that the equities of that particular case require a different rate." *Grosz-Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1164 (9th Cir. 2001). The interest rate prescribed by 28 U.S.C. § 1961 would provide Neathery with $142,365 in prejudgment interest. (Doc. No. 170 at 10).

Neathery contends that the interest rate prescribed by 28 U.S.C § 1961 will not adequately compensate her for her losses. To support this contention, she points primarily to the loss of her home equity (approximately $70,000), the loss of her 401(k) savings (approximately $100,000), and her accumulated credit card debt (approximately $14,000). These losses, however, are not solely the product of LINA's denial of benefits. The losses were exacerbated by the loss of Neathery's job and subsequent unemployment, which is unconnected to this case. Moreover, on the other side of the equitable scale, there is no indication that Defendants have earned a high rate of return on the money improperly withheld from Neathery. *Cf. Grosz-Salomon*, 237 F.3d at 1164.

The court finds that Neathery has not shown by substantial evidence that the statutory amount will not fully compensate her for "the losses incurred as a result of [LINA's] nonpayment of benefits." *Dishman*, 269 F.3d at 988. Therefore, the court grants prejudgment interest in the amount of $142,365 as proscribed by 28 U.S.C. § 1961. *See Grosz-Salomon*, 237 F.3d at 1164.

**B.     Attorney's Fees**

Under ERISA, a court may award a reasonable attorney's fee. 29 U.S.C. § 1332(g)(1). "As a general rule, ERISA employee plaintiffs should be entitled to a reasonable attorney's fee 'if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" *Smith v. CMTA-IAM Pension Trust*, 746 F.2d 587, 589 (9th Cir. 1984) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Neathery prevailed in her suit for life insurance benefits, therefore she is entitled to a reasonable attorney's fee.

To determine a reasonable attorney's fee in an ERISA case, the court applies the hybrid lodestar/multiplier approach. *Van Gerwen v. Guarantee Mutual Life Co.*, 214 F.3d 1041, 1045 (9th

Cir. 2000). First, the court determines the lodestar amount by "multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Id.* Second, the court may adjust the lodestar amount using a multiplier based on factors not subsumed within the lodestar calculation. *Id.* The multiplier, however, is only proper in exceptional cases where the lodestar amount is unreasonable. *Id.*

First, the court must determine "the number of hours reasonably expended on the litigation." *Id.* Neathery's counsel break down their work in this litigation into four phases. Phase 1 covers the beginning of the litigation through the initial decision by this court. Phase 2 covers the appeal to the Ninth Circuit. Phase 3 covers the district court proceedings on remand up to entry of judgment. Phase 4 covers time spend preparing this motion for prejudgment interest, attorney's fees, and costs.

For Phase 1, the first round of litigation in district court, Neathery's counsel—including attorneys and paralegals—ostensibly billed 1043.5 hours. (Monson Decl., Ex. 1) Upon careful review of the billing records, the court finds that fewer hours are reasonable. As experienced ERISA litigators, counsel should avail themselves of the institutional knowledge, banked research and briefs, and other efficiencies that are the province of experienced attorneys. Yet, Neathery's counsel spent extensive time researching, drafting, and reviewing for every aspect of the case. While thorough preparation is a boon to clients, reasonable attorneys must also consider what their clients are willing to pay—both the hourly rate and the time spent—for their services. *Cf. Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007). Therefore, the court finds the following amounts of time reasonable: 20 hours for Mr. Monson, 300 hours for Ms. Horner, and 50 hours of paralegal time.

For Phase 2, the Ninth Circuit appeal, Neathery's counsel billed 511.4 hours.[1] (Monson Decl., Ex. 2). The court's review of the billing records indicates that this too is somewhat inflated. Many of the arguments made before the Ninth Circuit had already been researched, drafted, and presented to the district court. While additional preparation for an appeal is certainly appropriate, Neathery's counsel again failed to capitalize on the efficiencies afforded experienced attorneys. Therefore, the

---

[1] Defendant claims that these attorney's fees are not recoverable because they were not requested from the Court of Appeal per Ninth Circuit Rule 39-1.6. However, a request to the Ninth Circuit is not a prerequisite in these circumstances when fees are authorized by statute. *See Twentieth Century Fox Film Corp. v. Entertainment Distributing*, 429 F.3d 869, 884 (9th Cir. 2005); *Cabrales v. Los Angeles*, 935 F.2d 1050, 1051 (9th Cir. 1991).

court finds the following amounts of time reasonable: 12 hours for Mr. Monson, 250 hours for Ms. Horner, and 100 hours of paralegal time.

For Phase 3, the second round of litigation in district court, Neathery's counsel billed 267.6 hours. (Monson Decl., Ex. 3). Having reviewed the billing records, the court finds it appropriate to lower this number only slightly. The vast majority of counsel's time was reasonably spent, although there is still some failure to capitalize on the work already expended in preparing for the first bench trial and the appeal. Therefore, the court finds the following amounts of time reasonable: 35 hours for Mr. Monson, 185 hours for Ms. Horner, and 15 hours of paralegal time.

For Phase 4, bringing this motion for prejudgment interest, attorney's fees, and costs, Neathery's counsel billed 108.5 hours. This number is grossly excessive, particularly because counsel are experienced ERISA litigators who undoubtedly bring motions for fees and interest on a regular basis. These are not difficult legal issues, so the majority of billable time should be spent by paralegals or secretaries gathering billing records and other necessary information. Therefore, the court finds the following amounts of time reasonable: 3 hours for Mr. Monson, 6 hours for Ms. Horner, and 10 hours for paralegals.

Finally, Neathery's local counsel, Mr. Lemucci, billed 17 hours of his time plus an additional 6.45 hours of paralegal and 5 hours of secretarial time. Based upon Lemucci's declaration, the majority of this time (10 hours of attorney time) was spent preparing his and Neathery's declarations to support this motion for attorney's fees. The court finds that reasonable amounts of time for these efforts are 12 hours of attorney time, 4 hours of paralegal time, and 3 hours of secretarial time.

After determining the time reasonably spent on litigation, the court must determine a reasonable hourly rate for the attorneys and paralegals who worked on the case. In determining an appropriate hourly rate, the court does not make reference to the actual rates charged to the prevailing party, rather "billing rates 'should be established by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity.'" *Welch*, 480 F.3d at 946 (quoting *Davis v. City and County of San Francisco*, 976 F.2d 1536, 1545 (9th Cir. 1992)).

Neathery requests rates of $525 per hour for Mr. Monson, $500 per hour for Ms. Horner, and

$450 per hour for Mr. Lemucci. The paralegal rates are $125 per hour for the Miller, Monson paralegals and $75 per hour for Mr. Lemucci's paralegals. Mr. Lemucci requests $22 per hour for his secretary's work. To begin, the court finds that the paralegal and secretary rates are reasonable. The attorney rates, however, are inflated.

The court does not question the experience or credentials of Neathery's counsel. But there is no evidence that counsel's requested fees reflect the rates that they charge "paying clients for legal work of similar complexity." *Welch*, 480 F.3d at 946. Counsel represent Neathery on a contingent fee basis. Neathery's declaration makes it clear that she would be unable to pay counsel's requested rates even if she was willing. Indeed, counsel's requested attorney's fees of $801,943.50 nearly matches the $917,365 award that Neathery has received.[2] This information casts doubt whether counsel's requested rates are in fact their market rates.

In addition, Ms. Horner requests a rate commensurate with supervising partners while she handled nearly all aspects of the litigation, including the most basic legal tasks normally done by associates. Mr. Lemuccis requests a high rate despite his lack of ERISA experience and minimal contributions. These considerations further suggest lower rates than those requested. Therefore, the court finds the following rates reasonable: $450 per hour for Mr. Monson, $350 per hour for Ms. Horner, and $300 per hour for Mr. Lemucci.

Finally, the court determines that this is not one of those exceptional cases in which the lodestar amount is not reasonable. *See Van Gerwen*, 214 F.3d at 1045. Therefore, the court awards the lodestar amount of $310,625 in attorney's fees to Miller Monson and $3,891 to Mr. Lemucci.

**C.     Costs**

Under ERISA, a court may allow costs to either party. 29 U.S.C. § 1132 (g)(1). Neathery requests $9,750 in costs to compensate two expert witnesses who reviewed the contents of the Lewis report during the first bench trial. These costs are reasonable, therefore the court awards them to Neathery.

**IV.   CONCLUSION**

---

[2] $917,365 is the sum of the $775,000 awarded in benefits plus the $142,365 in prejudgment interest.

For the foregoing reasons, the court GRANTS Plaintiff's motion for prejudgment interest, attorney's fees, and costs.  Prejudgment interest is awarded in the amount of $142,365.  Attorney's fees are awarded in the amount of $314, 516.  Non-statutory costs are awarded in the amount of $9,750.

**IT IS SO ORDERED.**

DATED: October 30, 2009

_____
Hon. Jeffrey T. Miller
United States District Judge